I have, uh, counsel on the, uh, Parham matter. Good morning, Your Honor. May it please the Court, Cheryl Sturm for the appellant Paul Parham. I'm respectfully requesting to reserve ten minutes for rebuttal, Your Honor. I'm sorry, five minutes for rebuttal. I was going to say, that's going to be an awful short answer. I'm sorry, Your Honor, five minutes for rebuttal. I beg your pardon. That's great. Go ahead. Mr. Parham has assembled, over the course of a number of years, a large, strong web of circumstantial and now physical evidence that he is actually innocent. And it would be a manifest injustice not to allow Mr. Parham to have his opportunity to litigate his claim of actual innocence, as well as his claim of ineffective assistance of counsel. And, um, I would also like to point out early in the argument that, um, Perkins v. McQuiggin, M-C-Q-U-I-G-G-I-N, Sixth Circuit, 670 Fed Third, 665, decided March 1, 2012, which has addressed a number of the questions that the Court also posed for counsel to answer in connection with the argument today. Does it address the Gonzales v. Crosby issue? Yes, I believe it does, Your Honor. All right. Well, then maybe you'll use it in the response to the following question. So doesn't the Supreme Court's decision in Gonzales require us to treat this 60B motion as a successive petition? I don't believe it does, Your Honor, because Mr. Parham has pointed to a number of procedural irregularities in the initial decision-making. First of all, he's pointed to the issue that there was an extraordinary breakdown in the administrative process, and although the Commonwealth argues that Mr. Parham is raising this for the first time on appeal, that is not accurate. First of all, the first order, which was issued, restoring Mr. Parham to his position as a judge, Mr. Parham's non-protonc right to an appeal, appears at A.A. 60 in Appellant's Appendix, and it required Mr. Parham to do absolutely nothing. It was an unusual order, and then it said that the non-protonc right to appeal was being restored. Counsel was going to be appointed, new counsel was going to be appointed, and that counsel had 30 days after the hearing, and Mr. Parham was never required to do anything under that order. Mr. Parham also pointed to a breakdown in court operations in his objection to the magistrate's report and recommendation that was directed at his 2005-2254 petition. He presented the argument at A.A. 64 that, quote, the breakdown in court operations resulting in Attorney Cottrell's continued appointment, conflicted by new employment and petitioner's extreme diligence, and lack of any remedial option created a situation appropriate for tolling. Next, the Commonwealth claimed, again, specifically pointing to an application for leave to file a second or successive petition that was directed to the Court of Appeals that Mr. Parham never raised this issue. However, in the supplemental appendix at page 2, paragraph 5, Mr. Parham said, by order dated September 17, 2001, direct appeal non-protonc was granted, and Donald Patron Esquire was subsequently appointed on September 27, 2001, without notice to petitioner. This is a pro se petition. It's supposed to be reviewed to identify the strongest issues. In addition, that was not done for Mr. Parham. Nothing? I'm not sure that what you've just recited speaks to the issue that I asked about. So, why shouldn't we consider this 60B motion a successive habeas petition? Why shouldn't we? Because obviously, if it is, that's problematic for Mr. Parham. Right. Well, in addition, it's our position, and I believe we've argued that, the magistrate judge would report a recommendation that was adopted by the district court judge was procedurally defective in that, A, it did not consider all of the evidence, old and new, evidence that was inculpatory, evidence that was exculpatory. In deciding whether or not Mr. Parham had made out an actual innocence claim, the court did not do that. The court instead focused on whether or not Mr. Parham had exercised due diligence. Isn't there a lot to get to before we get to the actual innocence issue? Right? You've got to get past the successive habeas petition. You've got to get past the 60B2 time constraint. Even if you argue it's a 60B6, you have hurdles there. All of those before you actually argue the merits of actual innocence. Well, in Brother Wax, in the Third Circuit, I believe we've cited the case in our brief. This circuit has found that a Rule 60B motion that is addressed to procedural errors is not a second or successive 2254 petition. So what we are doing in our 60B motion is pointing the court to the procedural errors that were made in deciding the 2254 the first time, that it is not a second or successive 2254. He's availing himself of the opportunity, under Rule 60B or an independent action, to ask the court to look at the procedures it used in deciding the matter the first time. Well, if it's not a successive petition, how do you get by the one-year time constraint of 60B2? Okay. A number of ways, Your Honor. First of all, the key piece of evidence in this case, the hole that Mr. Parham finally plugged in all of the arguments against why his proof that he was working in Virginia at the time this murder was committed was of no value because he had never proved at the exact time that the, not the murder, I'm sorry, the assault on the cab driver was committed, that at that exact time he could not have been in Philadelphia. So now, in 2010, on his own initiative, he has persuaded McGill, McGann Corporation in Virginia, to go through their 10-year-old employment records, pull out the evidence of his time cards, the time that he was working at the shipyard in Newport News, Virginia, that he was there, that the cabbie was shot, and there's no doubt that he was, on February the 6th. There's no doubt that Mr. Parham was working in Virginia City on November the 6th? I've got a lot of doubt about that. Well, the time cards that he produced said someone by the name of Darren, someone Dylan was working there, and Mr. Parham says, and that's me. I mean, that's the only thing, the description of the man is different, the age of the man is different. You know, you were saying we aren't getting to the merits of actual innocence, but if we move through to that, I find the claim of actual innocence very vague and unconvincing. Well, Your Honor, may I go through the evidence that supports the claim of actual innocence? Is Judge Greenaway happy with your answer to his question? I guess, how do we get around the one-year time limitations? I'm not happy, but I'd like to hear the answer to your question. I can do both. I'm ready to finish your question. This important document that says that on February the 6th, 1990, Dylan McNair, okay, we'll say Dylan McNair for now, was at work at this shipyard in Newport News, Virginia, and that was at 7 a.m. in the morning, and this cab driver was shot in Philadelphia at 7 a.m. How is that 7 a.m. established? On the back of the time card, it has the hours that he was working per week. Doesn't the back just say the usual hours? Your Honor, that may be fodder for an evidentiary hearing on what the custodian of records could testify to there, but it certainly doesn't put Mr. Parham out of the court, I don't think, as far as getting an evidentiary hearing, and also I think the letter that accompanied it from the corporation was explaining their own payroll records. So that's the evidence that Dylan McNair was at work in the shipyard at 7 a.m. The distances between the two cities is 271 miles, give or take a few miles, and the time difference is one hour and 40 minutes. What about Judge Ross' question about the 20-year difference in the age? Well, Mr. Parham has produced affidavits that the Commonwealth is nice enough to supply them in their supplemental appendix from Dylan McNair's mother. Dylan McNair was a 5-year-old boy who met Mr. Parham in Virginia, allowed Mr. Parham to use the name and the Social Security number of her 5-year-old son. He obviously was not going to be applying for jobs using a 5-year-old's birth date because he wouldn't get a job in a shipyard, so he was also on the lam from the law. Okay, so we're supposed to believe that the Dylan McNair on the card had to be him, albeit a birth date 20 years younger. Right. Okay, can I go through, you want to hear my evidence now as to why this is, Paul Parham is Dylan McNair? Well, yeah, in the context of that we've got to conclude that it's more likely than not that no reasonable jury could find him guilty. Right. Okay. So we've gone through the time the cab driver was shot from the police report, the work records of McMagan Corporation that shows Dylan McNair worked 7-2-3-30 for that week of employment. At the testimony from the homicide trial where Mr. Parham was found guilty of third-degree murder, this occurred prior to the cab driver assault. Former FBI agent Martin Houlihan was called by the Commonwealth. He said he was looking for Mr. Parham for the homicide case. He received information in August 1990 that Paul Parham was residing in Norfolk, Virginia, at 974 Marietta Street. He showed pictures of Paul Parham to residents there and established that Parham was at one time residing in the apartment there. Based on the investigation, he concluded that Parham was working for a construction company in the Portmouth, Virginia, area and using the name Dylan McNair. Parham worked there for approximately one week in February 1990 and injured his hand and no longer worked there after that. He asked for and obtained the x-rays of Parham's injured hand. He saw pieces of mail addressed to Dylan McNair come to the Marietta Street address. He spoke to several people who knew Parham as Dylan McNair. This is all in the appellant's appendix A-124 through A-133 so far. He said I would show the photo and they would state that the individual is Dylan McNair or someone who represented himself to be Dylan McNair, but the people who I showed the photograph to who knew Mr. Parham would say that's Dylan. Eventually I found out there was a Dylan McNair at that time in 1990. He was a five-year-old child. The medical records of the jail of the right hand of Mr. Parham that is introduced in support of his claim of actual innocence show a fused joint in the right thumb. The medical records of the hand center of Norfolk, Virginia regarding the injury to the right thumb of Dylan McNair have been introduced by Mr. Parham. They show the same injury. There was a testimony at the trial of the assault on the cab driver from Abdul Kabeem Imam of the mosque where Mr. Parham worshipped in that location of Virginia who knew him as Dylan McNair, knew he had injured his hand on the job, sat there in the courtroom and ID'd Paul Parham as the man he knew as Dylan McNair in Virginia. Mr. Parham has produced the affidavit of Dawood Saleem who said he's known Parham for 25 years and at the beginning of January 1990 Parham came to Norfolk, Virginia. Wanda McNair allowed Parham to use the social security number and ID of her son. Saleem helped Parham find an apartment at 974 Marietta and Parham was injured at work. He's introduced the affidavit of Wanda McNair Kesley who allowed Parham to use her son's social security number and name. The son was five years old. Parham injured his hand on a job at a construction company. She dropped by his apartment at 974 Marietta. That's the evidence and against that the commonwealth says he was at a different birth date. Mr. Parham testified at his trial that he was away for two reasons. One, he knew he was being sought by the police. And secondly, he had witnessed the murders for which he was tried. He was acquitted of one of the murders and convicted of third degree in the other and he felt that those individuals thought he was a loose end and might be trying to kill him. So it's not surprising that if he's using a false name and a false social security number, he's going to use a false birth date. But if we're dealing with actual innocence, which is what Judge Roth wanted you to speak to, I mean the standard that we have to apply is it's more likely than not that no reasonable jury could find him guilty based on what you've put before us. No, the standard's not, could not find him, reasonable probability that a rational jury properly instructed. Right, so it's not a mathematical certainty as the commonwealth suggests. He doesn't have to meet a standard that high. A mathematical certainty, it's more probable than not that he would be acquitted. If the jury heard this evidence. I'm sure we're all aware of the totality of the evidence that you put before us. Thank you, we'll hear from you. Okay, thank you, Your Honor. How do you pronounce your name, sir? Dolginus, Your Honor. Dolginus, yes. Dolginus, yeah. Go ahead. Thank you and good morning, Your Honor. Tom Dolginus from the District Attorney's Office of Philadelphia. There are a lot of questions asked by this court in the Certificate of Appealability Grant. As I understand it, there are really two main questions, themes posed by the court. One of which is whether a showing of actual innocence tolls the habeas deadline and what the content of that standard is. And then question number two is if there is such a thing as an actual innocence tolling for the habeas deadline, how does a petitioner present such an argument after his first habeas petition has been denied and what are the requirements? We have, very quickly, four general answers to those two questions. Number one, we don't have to reach these questions because Mr. Parham has not demonstrated that he is innocent by the necessary schlup standard. Number two, with respect to the habeas deadline, the habeas statute already allows new factual claims to be presented and the presentation of old factual claims runs against the language of the statute and also runs against the very nature of the statute of limitations. Point number three, even if there is an exception to the statute for old evidence of actual innocence, after one habeas petition has been dismissed with prejudice, the petitioner must satisfy the successive petition rules of 2244, which contains its own higher standard. It's not a preponderance standard for actual innocence claims, excuse me. It's a clear and convincing standard, so it's kind of a ratchet up. And finally, if actual innocence claims can be brought under Rule 60, they must be brought under Rule 60B2, which is the only provision of Rule 60 that specifically deals with evidence not before the trial court and which contains a requirement that the evidence be new, that the claimant be reasonably diligent and set an outside window of one year. Obviously there are a lot of things to cover. I'm not going to talk much unless asked by the court about the factual claims. I cover that in my brief. I certainly disagree with my colleague across the aisle's recitation. But what I will do is talk about two main issues. First, the actual innocence, the question of whether there's an actual innocence exception to the habeas time bar. And ultimately this is a question of statutory interpretation, because in 2244D Congress already provided for claims involving new evidence and set a reasonable diligence standard to trigger a restarted deadline. Actually technically it's not a tolling provision in 2244D, it's really a re-triggering provision. One thing I didn't really do in my brief and probably I should have done more is talk about Holland versus Florida. The Supreme Court said in Holland that the habeas deadline is subject to equitable tolling. But it said a few things that I think are directly relevant to whether evidence of actual innocence can toll the deadline. Number one, Holland focused on what we would think is garden variety tolling events. You know, an impediment defiling like an abandonment by council or something like that. The Supreme Court said this kind of garden variety equitable tolling impediment is such a routine part of non-jurisdictional deadlines that we can't assume the congressional silence in writing this statute signals an intent to prevent that kind of tolling. That's different from actual innocence tolling for a couple of reasons. First, actual innocence tolling is not routine. There's no tradition in habeas or really in any area of a statutory deadline that I know of that you can overcome a statutory deadline by offering evidence to reevaluate the ultimate question, that is the guilt, in this case the guilt of the defendant. And number two, the statute is not silent, unlike what Holland was looking at. The statute here specifically allows for claims of new evidence so long as the petitioner has been diligent and comes to court within a year. And the other thing I'd say about Holland is that... All right, well, let me give you a hypothetical, that we have DNA, that we have a much more specific factor pointing that you don't actually need as much evidence gathered, that there's a super-duper new DNA test that is developed, and that a person who was convicted and incarcerated ten years ago then determines under the new DNA test that he is innocent, that someone else committed the crime. Are you saying that that person has no remedy? Not necessarily. It would depend on a couple of things. First of all, it would depend on how new the test is, and whether or not the prisoner had access to it, I mean practical access. It's a new test, he just gets access to it, he's very diligent, he shows that he's actually innocent. Then absolutely under the time bar, under 2244D. But there's not one year, I mean it's... And in addition, I would say in a situation like that, the states, including Pennsylvania, do have their own, most now have enacted DNA statutes, and some are considering enacting various types of actual innocence statutes. So a DNA question would be first presented generally to the state courts. The other thing I would say about Holland is that it makes a distinction between what it calls tolling events under the habeas deadline and triggering events. It says that tolling events the habeas statute is silent about. And Holland says look by comparison at the triggering events, which are discussed specifically in the statute. Well the triggering events, one of them, is new evidence. So by making the discovery of new evidence, or the presentation of new evidence, a triggering event, again, the ultimate point, the habeas statute is not silent about this kind of claim and this kind of argument.  Does Gonzales require us to characterize this 60B motion as a successive? I think it does, Your Honor. It's true that Gonzales said statute of limitation questions generally fall under 60B. But again, in Gonzales, the court was looking at sort of a garden variety 60B argument. What we're dealing with here is not primarily an attack on the integrity of the federal proceeding, which, for example, an impediment to filing or something like that is. This is a request to relitigate the very basis for the criminal judgment,  Your Honor. So I would say generally what Gonzales does give us license to do is to say what's the substance of this type of claim? Does it go to the heart of the criminal judgment? Does it go to the heart of the matter, or is it an attack, a collateral attack on the integrity of the proceeding? And I think generally claims of actual innocence are the former. The other thing I'd say is that in this case, Mr. Parham raises claims. A, he raises a claim of straightforward actual innocence. I'm innocent, so the writ should issue. He also raises a claim, and this is in the petition that was denied and that is trying to be woken up by a 60B motion. One of the other claims is a claim of ineffectiveness of counsel for failing to subpoena the various evidence pieces of evidence that we're talking about today. The claims here, sometimes you have a problem. I might theoretically have a problem connecting allegations of innocence to specific claims. The responsive argument might be it's not really a claim. It really does go to the statute of limitations, your allegation of actual innocence. But in this case, the allegation of actual innocence does specifically go to two of those claims, so that by even the most strict technical interpretation of 2244D, this is evidence presented in support of a claim. And because of that, the one-year deadline clearly applies and the exceptions to it clearly should apply. I would just also say about the diligence requirement in general, that every avenue for the presentation of the innocence question has a requirement that the evidence be new, in the sense that a petitioner has to demonstrate some sort of diligence. The standards governing equitable tolling that the Supreme Court talked about in Holland and the Third Circuit's, this court's precedence interpreting equitable tolling, interpreting Holland. At the original trial, the evidence was offered by Mr. Parham's attorney and he didn't get it in because it wasn't properly authenticated. Now, isn't that another chance to bring this evidence before the court that would have gone before if his trial attorney had done it right? Well, a couple of things. The ineffectiveness standard includes, as Your Honor is obviously aware, a prejudice requirement. And so, even if we said counsel had no reason, that's apparent from the record, for not doing something, if when we look at the evidence that he wanted to introduce and we think it's not much more convincing than what he already introduced, it wouldn't be an ineffectiveness violation. So that the evidence at that point was not what was later presented? It was not all of what was later presented. We have, at trial, what was presented was some of the work records from the McGann Corporation in Norfolk, not the index card, which is the most recent piece of information, but the kind of computer printout was attempted to be introduced, as Your Honor is correct, at trial and was excluded as hearsay. The thing is that piece of evidence doesn't help much because it doesn't give the hours. And that's what the court, Justice Greenspan, I believe, was the trial court judge, said this doesn't establish what hour he would have been in Norfolk on that day anyway. Also, the record is replete with references by defense counsel to his inquiries in Virginia that he tried to talk to people and nobody recognized this guy. And I don't mean none of his friends recognized this guy. They did. But the question is, did people at the corporation recognize this guy? And no one has. And Mr. Rudenstein, I believe, was the trial counsel, said several times, nobody recognizes him. So that also goes to the ineffectiveness claim that, you know, Your Honor is raising or discussing. It's clear from the record that there was a reasonable reason not to pursue that. If he's on the phone or I'm not sure exactly what steps he took. He might have gone down. He might have had an investigator go down. Actually, as I'm saying it now, I think he did have an investigator go down and talk to people. No one at the corporation recognized this picture. So at some point it's reasonable for counsel to focus his fire elsewhere. And if the evidence before this court now were extremely convincing, then maybe we could second guess what counsel did or didn't do. But it's not that convincing. In fact, I don't think it's convincing at all. It raises questions. Well, even if we, I presume, even if we have the best evidence in the world, you know, ten nuns, you know, three fathers and whatever and documents and they all were lined up, I presume your first response would be you fail under B2, right? Well, my first response would be you fail under the deadline. But if we're going to B2, if we're saying Rule 60 is the appropriate vehicle for this, yes. I'm saying that there's no actual innocence exception to the habeas deadline. And I think that that doesn't mean that the fact that you foreclose a habeas remedy based on old evidence may be troubling in a hypothetical case. But it's a line that Congress can draw, both because the reliability of evidence decreases as time goes on, both because the state's interest in finality increases as time goes on, and because in the real world there are other things that a defendant can do. There's the commutation process. Now, I'm not saying it's common, but the Supreme Court in Herrera v. Collins, which is the case in which the court said there's no such thing as a freestanding claim of innocence in habeas, it was very important to the Supreme Court that ultimately those types of claims, and I see my time is up, if I can just finish my thought, ultimately those types of claims, once everything is over, can go to the governor. That's a constitutional structure. It's constitutional architecture for this kind of thing. Habeas was never meant to be the place where guilt or innocence was decided. It's supposed to be a limited review, and now a deferential review of what happened in state court. And as time goes on, it gets more and more difficult to reliably assess, does this evidence prove somebody guilty or innocent? In an extreme case where there's DNA, you know, not only would new DNA qualify, but state statutes have DNA exceptions. So we're only talking about cases where you would have old evidence that supposedly proves the guilt of the defendant, but apparently not to the extent that the prosecutor or the governor is moved. That's a, it's a situation that is not likely to occur, at least very often. I certainly haven't seen it, but it's difficult, I think, to interpret all the statutes based on that kind of hypothetical, when I think the Congress was pretty clear that if you want to make an argument based on evidence, it has to be new evidence or it has to have been diligent. Okay. Thank you. I do want to point out to the court that the letter from McGann Corporation that finally produced the time card, that document was filed within one year of the date it was received. It was filed as part of this Rule 60B motion. Every argument that the Commonwealth made has been soundly rejected in Perkins versus McQuinn that I cited at the beginning. First of all, Perkins says that there's absolutely no diligence required. Okay. We filed a Rule 60B motion challenging how the magistrate and the judge treated the original 60B motion. The magistrate judge found that actual claims of innocence, the defendant must prove he pursued his rights diligently. That has been soundly rejected by McQuinn, and the rejection is based on House versus Bell. It's based on a historical review of habeas statute where there was always equity in habeas. The courts have always been invested with equitable powers, and as the court pointed out very succinctly, if there was no equitable tolling except with due diligence, there would never be any equitable tolling because the person who had been duly diligent doesn't need equitable tolling. So there must be some other element known as equitable tolling that is separate and apart from the exercise of due diligence or any statute of limitations. What about Judge Roth's hypothetical? If you come up with super duper DNA that shows X, and then you don't present it for five years, I mean, there'd be no interspersal of a due diligence requirement there? Are you saying that due diligence is not where there is a claim of actual innocence? It does not apply. It just does not apply. It says in Perkins, all credible actual innocent claims are to be traded the same. Whether you're looking at the one that's provided in some of the statute of limitations, the AEDPA, it says no, you treat them all the same. The Congress included actual innocence exceptions to apply to the AEDPA statute of limitations. They point out the statute of limitations is not jurisdictional. Therefore, it is always subject to equitable tolling. The fact that the defendant does not file within one year does not require, nor is it mandated, the court immediately toss that petition. The court is required to look to see if there were equitable reasons. So everything the Commonwealth has argued today, and the Perkins points out that neither Holland nor Pace involved actual innocence claims. House versus Beldid. Has Perkins been adopted by any other circuits? It came out March the 1st, 2012, but this is the Third Circuit's chance. We get that, but I presume the answer is no. That's the most recent case I found, but certainly the very learned Ninth Circuit Court of Appeals has also come down with the Lee case, which the court directed us to in our filings. As to whether or not people at the plant recognized Mr. Parham, he worked there for one week, ten years before this trial took place. That's why it was important if there was going to be an alibi for defense counsel to get the records, which he didn't get. This defense counsel at this case that we're here about now also represented Mr. Parham in the homicide trial. He heard that FBI agent testify at the homicide trial. He questioned the FBI agent. He knew the FBI agent was retired and working for an attorney in Virginia, but the attorney for Mr. Parham did not subpoena him to come and testify to establish that Paul Parham, based on his investigation, was Dillon, and the judge would not allow the transcript from the first trial to come in. The Commonwealth impeached its own witness. They're the ones who called the FBI agent. They impeached their own witness and wouldn't let the transcript come in. So to pretend that the Commonwealth is interested in Mr. Parham getting any leniency down the road, this is the court to make that determination. We're not asking for habeas relief. It does not say, let Mr. Parham go. It says, let Mr. Parham have a full and fair hearing on his new evidence of actual innocence. So I had a statistic presented to me recently that the United States has 5 percent of the world's population. It has 25 percent of the world's prison population. Do we also want to be a country where our statutes are interpreted and require the courts continue to incarcerate people that they have reason to believe are innocent, to willfully continue to incarcerate people because they didn't meet some deadline? The cases that are coming down are saying there is no such attachment to the AEDPA. All right. Thank you very much. Thank you, Counsel. This case was well argued and well briefed. We'll take it under advisement. And thank you very much. Thank you.